OBION COUNTY, for use of Free Bridge Drainage District, v. W. D. HOUSER, et al., MRS. W. B. LEECH, Appellant.

Western Section.   March 1, 1929.

Petition for Certiorari denied by Supreme Court, May 27, 1929.

Pierce & Fry, of Union City, for appellant.
W. B. Leech, of Nashville, for appellees.

HEISKELL, J. This is a suit to collect Drainage District taxes alleged to be due and delinquent. As before this court it involves only one appellant, Mrs. W. B. Leech. She was one of the defendants and there was a decree declaring the taxes claimed as to her to be due and a lien on her property and ordering same sold to satisfy said lien. So much of the bill as relates to appellant and her property, is as follows:

"The Free Bridge Drainage District was duly organized as a drainage district or local improvement district by a decree of the county court of Obion county, Tennessee, on the — day of —.

"That said District was organized under the laws of Tennessee authorizing such district to be formed, which is Chapter 185 of the Acts of 1909 of the General Assembly of the State of Tennessee, and that the following named parties own real estate in Obion county within the Drainage District as organized, and upon which there was an assessment for local improvements, and which assessment was duly and legally assessed against the respective parties as follows: . . .

"Tract 47 assessed to I. F. McLain and Company, now owned by Mrs. W. B. Leech, consisting of sixty-one acres of land, bounded on the north by the county line; on the south by Murry et al.; on the east by Callahan et al.; on the west by Bradshaw, assessed for local improvements for the year 1925 at $78.35, and for the year 1926, $78.35 and for the year 1924 the sum of $78.35, with interest thereon, and which amount is due, owing, unpaid and delinquent.

"A certified copy of the assessments that are delinquent is herewith filed, marked Exhibit 1 and made a part of this bill, but need not be copied."

Each of the above described tracts of land is delinquent and the same was assessed for local improvements in the Free Bridge Drainage District, and there is a valid lien in favor of said Drainage District to secure outstanding bonds, issued under the orders and decrees of the county court of Obion county under said Act of the Legislature of Tennessee of 1909, and Chapter 185, together with a ten per cent. fee for delinquency, and which ten per cent has accrued and is due by each one of the above set out delinquent taxpayers.

Premises considered, complainant therefore prays:

"That copy of bill and subpoena issue to the end that defendants and each of them be required to answer this bill, but not upon oath as that is waived.

"That upon the hearing of this cause the court ascertain and declare and decree that each of the respective parties above set out be declared to be delinquent in the local assessments as above charged, together with the interest due upon each of said assessments, and that ten per cent be added to each assessment as provided by law, and that the said Obion county for the use and benefit of Free Bridge Drainage District has a lien upon each of the above described tracts of land for the amount due by each of said respective tracts of land; and that the court declare said lien, and to enter such decrees and orders as may be necessary to enforce the same, and to which end that each of said tracts of land be ordered sold to satisfy said liens subject to future assessments.

"That complainants have all such other, further and general relief."

The certified list of delinquent taxpayers, made exhibit to the bill, reads as follows:

"49 I. F. McLean & Co. Nashville, Tenn., No. acres 61 North county line, South Murray et al., East Cashdollar et al., West Bradshaw, 1925 78.35 1926 78.35 1924 78.35."

A demurrer was filed and withdrawn. The defense rests on answer filed Nov. 19, 1927, which is as follows:

"This defendant denies the allegation in the bill that she is or ever was the owner, or that I. F. McLean & Co. or I. F. McLean, at any time owned sixty-one acres of land in Obion county, as bounded, set out and described in said bill as lying within said Free Bridge Drainage District.

"Defendant admits that she is the owner of a tract of thirty-seven and one-half acres of land located in the 9th District of Obion county, Tennessee, which land she inherited from her father, I. F. McLean. She asserts that only twenty-three and one-half acres of this tract lie within the boundaries of said drainage district, which district is alleged in the bill to have

been organized under the laws of the State of Tennessee, Chapter 185 in the Acts of 1909.

"Defendant herewith files as Exhibit 'A' to this answer, a plat or map showing the location of this tract of land, and the location of the boundaries of said drainage district with reference to this tract of land, which map defendant asserts is correct, and shows that only twenty-three and one-half acres of the tract lies within the boundaries of said drainage district. She asserts that this is all the land she or the one from whom she inherited it ever owned in that section, or that lies within said district, and that this is all of the land that could be assessed for drainage taxes, instead of sixty-one acres, as alleged in said bill.

"Defendant denies the allegation in the bill that this Free Bridge Drainage District was duly or legally organized in so far as this defendant, or her father from whom she inherited the land is concerned; that neither of them were ever legally notified as provided in said Act of the organization of the district, or that they were parties to the same.

"Defendant denies the allegation in the bill that this land was legally assessed for drainage taxes for the years 1924, 1925 and 1926; that if an attempt was made to assess the land for drainage taxes it was done without legal notice to her or to her father from whom she inherited the land as provided in said Act of the Legislature; or any amendatory act thereto; that if said assessment was attempted to have been made it was an error or a mistake wherein sixty-one acres were assessed instead of twenty-three and one-half acres—all the land that she owned in said district; and that the notice served in this cause is the first opportunity she has had to rebut said erroneous and excessive assessment.

"Defendant asserts that if a rearrangement or reassessment was attempted to have been made on this land for drainage taxes for the years above stated, that it was made without any kind of legal notice to this defendant or to her father from whom she inherited the land, and that said attempted assessment or rearrangement of said assessment was null and void, for the want of notice, in that it prevented the owners of the land from being heard before an impartial tribunal, or to appeal therefrom, and was violative of the 'due process' law provisions of the State and Federal Constitutions.

"Defendant further asserts that if said assessment was made, which she denies, it was an error in being excessively made; was arbitrary, illegal and without notice, and if it was made upon a percentage basis, it was done without notice, excessively, and not in line with assessments made upon land adjoining this tract,

650

and of like value and benefits, and is a discrimination against defendant's property, repugnant to all sense of justice and fairness.

"This defendant is advised that a Court of Equity will not permit the complainant to recover upon an erroneous, excessive and unjust assessment.

"Defendant now, not waiving any of her legal rights heretofore set out in this answer, and not desiring to evade the collection of any just taxes upon her land, whether the same was a benefit or not, or whether said taxes were legally assessed or not, asserts that for the period set out in the bill she and her father only owned twenty-three and one-half acres of land lying within the boundaries of said drainage district, and she asserts that the assessment made upon the adjoining and land of like value for said years has amounted to about $1.28½ per acre annually, and in a spirit of compromise she herewith tenders and pays into the hands of the Clerk and Master in this cause the full amount of taxes, together with interest thereon, as follows:

For 1924. 23½ acres at $1.28½ per A. $30.20—Int. 3/1/25 to 11/16 $4.91
For 1925. 23½ acres at $1.28½ per A. $30.20—Int. 3/1/26 to 11/16 3.09
For 1926. 23½ acres at $1.28½ per A. $30.20—Int. 3/1/27 to 11/16 1.28

Total taxes........ $90.60                                    9.28
Interest to Nov. 16, 1927....    9.28

                                 $99.88

"Defendant asks that this tender be accepted in full of said taxes, and that a decree be entered in the cause to this effect. Defendant is advised that under the provisions of the Act under which this bill is filed that no solicitor fees attach or could be recovered unless the land should be sold to enforce the payment of the taxes.

"Defendant now having fully answered she asks to be hence dismissed with her costs."

On October 4, 1927, defendant filed an affidavit for a continuance which was denied, and on October 5, 1927, a decree went down from which Mrs. Leech has appealed.

Appellant has filed a motion to have the case transferred to the Supreme Court on the ground that it involves a constitutional question. We do not find any sort of a constitutional question and the motion is overruled.

No proof was offered by defendant. She rests upon an answer not sworn to. A copy of a deed is made exhibit, which shows a conveyance to I. F. McLean of thirty-seven and one-half acres. This, however, is not proof that defendant did not have other land in this drainage district.

The first assignment is that it is not shown that defendant had notice of the organization of said drainage district. It is true the Act, Code 3871, requires publication for property owners who do not join in the petition to form a drainage district, but when the organization has been allowed and declared and the district has proceeded to assess drainage taxes, to do work, and then sues property owners for taxes claimed to be due and unpaid, the defendants cannot collaterally attack the legality of the organization by way of defense to the tax, but if this can be done, certainly the burden would be upon the defendant to show the organization invalid, and here no proof is offered.

The Statute, Code 3871a126, in regard to a suit like the present, provides:

"When it is desired by the Board of Directors or other interested party entitled to sue, to file such bill, the County Trustee, upon request, shall make out a statement or list, showing all the lands upon which such assessments are so delinquent, and the names of the owners thereof, as appears upon the Drainage Assessment book, or showing any tract or tracts assessed to unknown owners, if such be the case, and certify as Trustee to the correctness of such statement or list as the same appears upon said book, and in such Chancery suit, such certified statement or list shall be prima facie proof of the facts so certified to, and that such assessments are delinquent and sufficient proof to authorize a decree of sale in the absence of rebutting proof of the facts shown by such certified statement."

If any attack is to be made upon the legality of the organization it should have been before this, or in any event by pleading and proof in the present case, and conceding the validity of the organization, any defense to the claim of the bill would have to be sustained by proof.

In assignment two, however, defendant contends that the certified list upon which the suit is brought is not prima facie evidence, because it is signed "W. E. Jackson, Trustee, By J. F. Gregory" without giving the official character of J. F. Gregory. It is sufficient to say as to this, that the objection comes too late by assignment of error. No objection was made in the lower court. If the attention of the court had been called to the omission, it could have been corrected by adding the official character of Gregory, or having some one make the certificate who was authorized to do so.

Another objection to the decree is made in this same assignment. That the description of the land in the bill differs from that in the decree. There is a slight discrepancy between the bill and the certified list and the decree follows the list. The bill reads "tract 47 . . . East by Callahan et al." The certified list and the decree read "tract

49 . . . East by Cashdollar et al.'' The rest of the description is the same. The certified list is declared prima facie true, so it was proper to follow it in the decree, but no one could fail to see that the bill referred to the same property, and nothing was said about it by defendant in the court below.

The third assignment is as follows:

''The Chancellor was in error in refusing to grant the relief set out in the answer (Rec. p. 11) even if no other questions were presented in the cause.

''It is clearly before the court not only by the answer of the appellant and Ex. A. thereto and also Ex. 'Deed' (Rec. pp. 19 and 20) that neither this appellant nor the one from whom she inherited the land at any time owned sixty-one acres of land either in that county or in that drainage district; that appellant does not own tract No. 47 alleged to contain sixty-one acres, or tract No. 49 unless it be the twenty-three and one-half acres out of a total of thirty-seven and one-half acres—all the land that she owns in the county.

''In other words, judgment is rendered in this cause upon sixty-one acres of land; whereas appellant only owns twenty-three and one-half acres within the district liable for taxes.

''To remedy cases of this kind the Act of 1909 under which it is claimed this drainage district was organized, was amended by the Acts of 1923—Chap. 73 as follows: 'Sec. 33a, Be it further enacted that whenever it may appear any tract of land lying within such drainage district has been assessed with 15% or more excess acreage the owner of such tract of land may go into chancery court by bill filed against the district and directors and have said mistake corrected, and the assessment changed, and such chancery court shall in the decree correcting said mistake determine whether it shall be necessary for said district to levy a special assessment to meet the deficiency caused by the correction of said mistake.'

''When this error or mistake as to the assessment of far in excess of 15% of the acreage of this tract was discovered, this appellant was already in the chancery court, being sued for the taxes in this cause.

''Now since the Act of the Legislature of 1921, Chap. 2, being Sec. 6133a1, Shannon's Supplement to the Code, it is no longer necessary to file a cross-bill in a case of this kind, an answer is sufficient. The relief asked for in appellant's answer (Rec. p. 11) should have been granted, and the bill dismissed as to this appellant. All of the facts appear in the record under competent proof to bring this cause under the provisions of Chapter 73 of the Acts of 1923 as above set out, and by carrying out the direc-

tions of this Act the question in this cause would have been settled, and it would prevent future litigation, a multiplicity of suits involving this identical question and this identical case.''

The answer to this is that there is no proof whatever to sustain the answer. Even if it can be given all the effect of a cross-bill and all the effect of a bill to correct an erroneous assessment, it cannot be given the effect of proof and no other proof is tendered except the deed to show that McLean did own at one time thirty-seven and one-half acres. Nothing to show that he did not have more. The plat referred to as Exhibit A, to the answer and attached to the assignments of error and brief, has no probative effect whatever. It might have been drawn by any one and its truth is vouched for by no one. Besides, this plat gives only one boundary owner, Murray. Where do the other boundaries of Tract 49 lie, County line, Cashdollar and Bradshaw? They might be significant at least.

The fourth and fifth assignments contend that the Chancellor should have accepted the offer of compromise made by defendant and dismissed the bill as to her. Defendant is met by the same reply here as elsewhere in the case. She has no proof. No proof that the amount offered was the amount due from her. No proof that she tendered the money or paid it into court. If the money was paid into the court the Chancellor was not bound to accept it in full unless it was proven to be the whole amount due and there is no attempt to make such proof.

The sixth assignment is that the court erred in overruling the defendant's application for a continuance. The bill was filed October 13, 1927. The answer November 19, 1927. The affidavit for a continuance was filed October 4, 1928. The affidavit states that since the last term of court (this would be the April 1928 Term) defendant has been ill and out of the State and not able to give her deposition. She does not say how sick, how long sick or how long out of the State. She does not say that the facts relied on could not be proved by other witnesses. Manifestly, the extent and location of her property could be made as well if not better, by others. Those familiar with the books of the Register's office and a surveyor familiar with the boundaries of the land and of the drainage district. The Chancellor cannot be put in error for denying this application.

All assignments of error are overruled and the decree of the Chancellor is affirmed.

Owen and Senter, JJ., concur.